UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SANDER SABA,

                *Plaintiff*,

      v.

ANDREW CUOMO, in his official capacity as Governor of the State of New York, *et al*.,

                *Defendants*.

No. 20 Civ. 5859 (LJL)

# DEFENDANTS' MEMORANDUM OF LAW
# IN SUPPORT OF THEIR MOTION TO DISMISS

LETITIA JAMES
Attorney General
State of New York
28 Liberty Street
New York, New York 10005

*Attorney for Defendants*

Andrew Amer
  Special Litigation Counsel
    *of Counsel*

**TABLE OF CONTENTS**

**PRELIMINARY STATEMENT** ..................................................................................................1

**STATEMENT OF FACTS** ........................................................................................................2

    A.   The DMV License Application Process ............................................................................2

    B.   Plaintiff's Complaint .........................................................................................................4

**STANDARD OF REVIEW** .......................................................................................................5

**ARGUMENT** ..............................................................................................................................5

    I.   BECAUSE DMV HAS ALREADY STARTED IMPLEMENTING THE SYSTEM CHANGES NECESSARY TO OFFER AN "X" GENDER DRIVER'S LICENSE AND HAS OFFERED TO PROVIDE PLAINTIFF WITH AN "X" GENDER LICENSE IMMEDIATELY, THIS ACTION IS MOOT..........................................................................................................................5

    II.   THE ELEVENTH AMENDMENT BARS RELIEF AGAINST A STATE OFFICIAL BASED ON PAST CONDUCT........................................................................10

**CONCLUSION** ........................................................................................................................12

# TABLE OF AUTHORITIES

**Cases**

*Already, LLC v. Nike, Inc.*, 568 U.S. 85 (2013) .................................................................................5

*Am. Freedom Defense Initiative v. MTA*, 109 F. Supp. 3d 626 (S.D.N.Y. 2015)............................8

*Am. Freedom Defense Initiative v. MTA*, 815 F.3d 105 (2d Cir. 2016) ..................................... 7, 8

*Amato v. Elicker*, No, 20 Civ. 464, 2020 WL 2542788 (D. Conn. May 19, 2020).........................9

*B.C. v. Colton-Pierrepont Cent. Sch. Dist.*, 357 F. App'x 366 (2d Cir. 2009) .................................9

*Doyle v. Midland Credit Mgmt., Inc.*, 722 F.3d 78 (2d Cir. 2013) ...................................................5

*Dunbar v. Empire Szechuan Noodle House Inc.*, No. 18-CV-9625, 2020 WL 2132339 (S.D.N.Y. May 5, 2020) ..............................................................................................................5

*Fuller v. Bd. of Immigration Appeals*, 702 F.3d 83 (2d Cir. 2012) ..................................................7

*Green v. Mansour*, 474 U.S. 64 (1985)..........................................................................................11

*Harrison & Burrowes Bridge Constructors, Inc. v. Cuomo*, 981 F.2d 50 (2d Cir. 1992) ..............9

*Holland v. Goord*, 758 F.3d 215 (2d Cir. 2014) ..............................................................................8

*Inside Connect v. Fischer*, No. 13 Civ. 1138, 2014 WL 2933221 (S.D.N.Y. June 30, 2014).......11

*J.S. ex rel. N.S. v. Attica Cent. Schs.*, 386 F.3d 107 (2d Cir. 2004)..................................................5

*Kaminski v. Semple*, 796 F. App'x 36 (2d Cir. 2019)....................................................................10

*Lamar Advertising of Penn, LLC v. Town of Orchard Park*, 356 F.3d 365 (2d Cir. 2004) ........ 8, 9

*Makarova v. United States*, 201 F.3d 110 (2d Cir. 2000)................................................................5

*N.Y. State Rifle & Pistol Ass'n v. City of New York*, 140 S. Ct. 1525 (2020) ..................................9

*Patterson v. Patterson*, No. 16 Civ. 844, 2019 WL 1284346 (W.D.N.Y. Mar. 20, 2019)............12

*Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139 (1993) ...................10

*Ramos v. N.Y. City Dep't of Educ.*, No. 19 Civ. 2923, 2020 WL 1331896 (S.D.N.Y. Mar. 22, 2020) ..........................................................................................................................6

*Russman v. Bd. of Educ.*, 260 F.3d 114 (2d Cir. 2001) ....................................................................6

*Samele v. Zucker*, 324 F. Supp. 3d 313 (E.D.N.Y. 2018) ................................................................7

*Scalia v. Angelica Textile Servs., Inc.*, 803 F. App'x 542 (2d Cir. 2020) ........................................7

*Szymonik v. Connecticut*, No. 19-230, 2020 WL 1650329 (2d Cir. Apr. 3, 2020) .......................10

*Treistman v. McGinty*, 804 F. App'x 98 (2d Cir. 2020) ........................................................... 10, 12

*U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388 (1980) .................................................................6

*Velvet Underground v. Andy Warhol Found. for the Visual Arts, Inc.*, 890 F. Supp. 2d 398 (S.D.N.Y. 2012)...........................................................................................................................7

*Wagschal v. Skoufis*, No. 19 Civ. 2393, 2020 WL 1033873 (S.D.N.Y. Mar. 3, 2020), *appeal docketed*, No. 20-871 (2d Cir. Mar. 11, 2020) ........................................................................6

*Ward v. Thomas*, 207 F.3d 114 (2d Cir. 2000)....................................................................... 10, 11

**Statutes**

42 U.S.C. § 1983......................................................................................................................................5

**Rules**

Fed. R. Civ. P. 12(b)(1)............................................................................................................................1

Defendants Andrew M. Cuomo, sued in his official capacity as Governor of the State of New York, and Mark J. F. Schroeder, sued in his official capacity as Commissioner of the New York State Department of Motor Vehicles ("DMV") ("Defendants"), respectfully submit this memorandum of law, together with the Declaration of Gregory Kline, dated October 29, 2020 ("Kline Decl."), in support of their motion pursuant to Fed. R. Civ. P. 12(b)(1) to dismiss the Complaint, ECF No. 1 ("Compl."), filed by Plaintiff Sander Saba ("Plaintiff"), on mootness grounds.[1]

## PRELIMINARY STATEMENT

This action raises no justiciable dispute for the Court to resolve. Several months *before* Plaintiff filed this suit demanding that DMV offer an "X" gender driver's license to nonbinary individuals like themselves, the State had already decided to do so, and had already embarked on an expansive project to replace DMV's decades-old legacy computer system with a new system that will, among other things, permit New Yorkers to receive a driver's license that bears an "X" gender identification marker through an automated application process. Because of the length of time required for DMV to complete this complex system-wide undertaking, at a cost of $180 million, DMV offered Plaintiff the opportunity to apply immediately for a driver's license that has an "X" gender identification marker through a manual application process that allows Plaintiff to leave the gender application question blank.

With the State implementing an overhaul of DMV's legacy computer systems so that nonbinary individuals can receive an "X" gender driver's license, and with DMV's offer for Plaintiff to immediately obtain an "X" gender license without the need to respond to the gender question on the application, there is nothing left to litigate and no basis for the Court to continue to exercise jurisdiction over the action. (Point I, *infra*.) Moreover, with prospective relief unavailable to Plaintiff,

---

[1] On a Rule 12(b)(1) motion, the Court may consider evidence outside the pleadings. *See, infra*, at 5.

the Complaint is also barred by the Eleventh Amendment, which prohibits a federal court from issuing a declaratory judgment against a State Official based only on past conduct. (Point II, *infra*.) Accordingly, this action should be dismissed in its entirety.

## STATEMENT OF FACTS

### A. The DMV License Application Process

The current automated process for obtaining a New York State driver's license requires applicants to complete a form that contains a question requiring the applicant to select either "male" or "female" for their gender. Kline Decl. ¶ 3. Applicants must make this binary "male" or "female" gender selection under DMV's decades-old legacy computer system because it is required in order to generate the motorist identification ("MI") number that serves as the principal means of internally identifying the driver record within DMV's computer system. *Id.* The MI number is created by a system algorithm that requires as input various data specific to the licensee, including the applicant's gender. *Id.* ¶ 4. The algorithm requires that the gender information be either "0" or "1," reflecting the applicant's selection of gender from the binary choice of "male" or "female" on the application form. *Id.* The existing system cannot create an MI number without the data input of either "0" or "1" for the applicant's gender. *Id.*

The MI number is the foundational core of the DMV legacy computer system, without which DMV cannot issue a driver's license to an applicant or create and maintain a DMV database record for the licensee that is required for the multitude of back-end applications used by DMV and third parties. *Id.* ¶ 5. For internal purposes, the MI number is critical for associating key information with the correct driver's DMV record, including traffic tickets, convictions, points, and fines, and for linking vehicle registration and automobile insurance status and tracking lapses that would require license suspension. *Id.* For purposes of third party applications, the MI number is essential for maintaining records that are accessed by law enforcement, the U.S. Selective Service

System, organ donor registries, county boards of election (for voter registration), credit card companies, and insurance companies, to name just a few. *Id.*

In late 2019 – several months *before* Plaintiff initiated this lawsuit – the State authorized DMV, at a cost of $180 million, to embark on a complex project to replace DMV's legacy system with a new system that would, among other things, permit DMV to create a license record without reference to an MI number, and thus without the need for the applicant to make a "male" or "female" gender selection. *Id.* ¶ 6. Under the new system, there will be no MI number. *Id.* Due to the complex nature of the project and the large number of DMV applications and processes that need to be integrated into the new system, the implementation of the new system will necessarily (and unavoidably) be time-consuming; it involves multiple phases -- bidding, designing, developing, testing, training, and roll-out. *Id.* ¶ 7. As a result, DMV anticipates the new system will likely not be operational until the fourth quarter of 2021, or later. *Id.* Once the new system is operational, DMV will be able to offer and issue to self-certifying nonbinary applicants an "X" gender driver's license through an automated application procedure. *Id.*

In the interim, DMV has invited Plaintiff to apply for a New York State driver's license through a manual process that will not require Plaintiff to complete the gender question on the application and will bear an "X" gender identification marker on the face of the license. *Id.* ¶ 8. To complete the manual process, DMV advised Plaintiff that they needed to submit a completed new license application except for the gender question, which Plaintiff was instructed to leave blank. *Id.* ¶ 9. In addition, Plaintiff would need to provide DMV with a copy of their (valid) Pennsylvania license and an acceptable proof of identity, date of birth, and social security number. *Id.* ¶ 10. Finally, DMV advised Plaintiff that they need to arrange a date and time to visit a local DMV office to take a photograph and the required vision test. *Id.* ¶ 11. Upon completion of this process, DMV will make the necessary binary gender selection required to create an MI number and will cause a

3

license to be manually created for Plaintiff that bears an "X" gender identification marker and that will remain valid for up to a five year term from the Plaintiff's birth date, consistent with any new license of this type. *Id.* ¶ 12. To avoid any confusion the "X" gender license may cause for third parties who may need to view the license, such as law enforcement, DMV also offered to provide Plaintiff with a letter that confirms the license is genuine and has not been altered. *Id.* To date, Plaintiff has not expressed any interest in obtaining an "X" gender license through this manual process. *Id.* ¶ 13.

### B. Plaintiff's Complaint

Plaintiff self-identifies as a nonbinary individual who became a permanent New York resident in May 2020. Compl. ¶ 61, 78. Because Plaintiff is a New York resident, Plaintiff is required by New York law to exchange their Pennsylvania driver's license for a New York driver's license. *Id.* ¶ 99. On July 28, 2020, Plaintiff filed this action, alleging that they were unable to obtain a New York driver's license with a nonbinary "X" gender identification marker, and that to complete the new license application form they are required to choose either "male" or "female" as their gender and to attest to that selection. Compl. ¶ 83-86. Plaintiff alleges that the State's failure to offer a nonbinary driver's license and use of an application form that requires the applicant to attest to the selection of their gender as either "male" or "female" violates Plaintiff's rights under the Equal Protection Clause (*id.* ¶ 141), Due Process Clause (*id.* ¶ 157), and First Amendment (*id.* ¶ 166), and unlawfully discriminates against Plaintiff under Section 297 of the New York State Human Rights Law (*id.* ¶ 177).

Plaintiff seeks an order permanently enjoining Defendants from enforcing a policy that fails to offer a nonbinary driver's license and requiring Defendants to update the application form to include an "X" gender marker for nonbinary applicants. *Id.* p. 30-31.

4

**STANDARD OF REVIEW**

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). In reviewing a motion to dismiss under Rule 12(b)(1), the court "must accept as true all material factual allegations in the complaint, but [is] not to draw inferences from the complaint favorable to plaintiffs." *J.S. ex rel. N.S. v. Attica Cent. Schs.*, 386 F.3d 107, 110 (2d Cir. 2004) (citation omitted). A district court may consider evidence outside the pleadings when resolving a motion to dismiss for lack of subject matter jurisdiction. *Id.*; *Dunbar v. Empire Szechuan Noodle House Inc.*, No. 18-CV-9625, 2020 WL 2132339, at *3 (S.D.N.Y. May 5, 2020).

Although the Court has original jurisdiction over this action pursuant to 42 U.S.C. § 1983, under Article III of the Constitution, "[w]hen a case becomes moot, the federal courts lack subject matter jurisdiction over the action." *Doyle v. Midland Credit Mgmt., Inc.*, 722 F.3d 78, 80 (2d Cir. 2013). "A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 90 (2013) (citation omitted). Generally, "the case is moot if the dispute is no longer embedded in any actual controversy about the plaintiffs' particular legal rights." *Id.* at 91 (citation omitted); *Dunbar*, 2020 WL 2132339, at *3.

**ARGUMENT**

I.  **BECAUSE DMV HAS ALREADY STARTED IMPLEMENTING THE SYSTEM CHANGES NECESSARY TO OFFER AN "X" GENDER DRIVER'S LICENSE AND HAS OFFERED TO PROVIDE PLAINTIFF WITH AN "X" GENDER LICENSE IMMEDIATELY, THIS ACTION IS MOOT**

The circumstances that gave rise to this action have been resolved and Plaintiff has received all the relief they could obtain, rendering the action moot and necessitating dismissal. As this Court is aware, "Article III of the Constitution limits federal 'judicial power,' that is, federal-court jurisdiction, to 'Cases' and 'Controversies.'" *Wagschal v. Skoufis*, No. 19 Civ. 2393, 2020 WL

5

1033873, at *6 (S.D.N.Y. Mar. 3, 2020) (quoting *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 395 (1980)), *appeal docketed*, No. 20-871 (2d Cir. Mar. 11, 2020). "[A]t all times, the dispute before the court must be real and live, not feigned, academic, or conjectural." *Id.* (quoting *Russman v. Bd. of Educ.*, 260 F.3d 114, 118 (2d Cir. 2001)). "When the issues in dispute between the parties 'are no longer live,' a case becomes moot" and must be dismissed. *Id.* (quoting *Lillbask ex rel. Mauclaire v. Conn. Dep't of Educ.*, 397 F.3d 77, 84 (2d Cir. 2005)).

So it is here. The State has already authorized DMV to undertake a $180 million project to replace DMV's legacy computer system with a new system that will allow DMV to issue an "X" gender driver's license through an automated process, and the project is underway. Kline Decl. ¶¶ 6-7; *cf.* Compl. ¶ 104 (alleging that a DMV employee explained to Plaintiff that the DMV was in the process of updating its computer system). Because the new system will not be operational in the near term, DMV has invited Plaintiff to apply immediately for an "X" gender license through a manual process and to skip the gender question on the application. *Id.* ¶¶ 8-11. Accordingly, all the prospective injunctive relief that Plaintiff sought in this lawsuit, namely to stop Defendants "from refusing to provide driver's licenses that accurately reflect nonbinary individuals' gender identity through the use of an 'X' gender marker," and compel Defendants "to update the Application" to avoid forcing applicants to make a "male" or "female" gender selection, Compl. at pp. 30-31, has already been obtained. This renders the case moot and requires dismissal. *See Ramos v. N.Y. City Dep't of Educ.*, No. 19 Civ. 2923, 2020 WL 1331896, at *2 (S.D.N.Y. Mar. 22, 2020) (Koeltl, J.) ("The hallmark of a moot case or controversy is that the relief sought can no longer be given or is no longer needed.").

The only remaining substantive relief Plaintiff seeks is to have the Court declare that Defendants' past conduct in failing to provide Plaintiff with an "X" gender license and using an application form that requires an applicant to make a "male" or "female" gender selection "are in

6

violation of the Equal Protection Clause . . .; the Due Process Clause . . .; the Free Speech Clause of the First Amendment . . . ; and New York [State] Human Rights Law's provisions prohibiting unlawful discriminatory practices in places of public accommodation." Compl. at p. 30. However, "courts may not entertain actions for declaratory judgment 'when the parties are asking for an advisory opinion, when the question sought to be adjudicated has been mooted by subsequent developments, and when there is no standing to maintain the action." *Velvet Underground v. Andy Warhol Found. for the Visual Arts, Inc.*, 890 F. Supp. 2d 398, 403 (S.D.N.Y. 2012). Simply put, a retrospective declaration regarding whether conduct was constitutional when in force in the past would have no practical effect, and no legal purpose. Because it is not possible to grant Plaintiff any more relief than Defendants are already providing through the DMV system overhaul and invitation for Plaintiff to apply immediately for an "X" gender license without answering the gender question on the application, "the court 'must dismiss the case, rather than issue an advisory opinion.'" *Scalia v. Angelica Textile Servs., Inc.*, 803 F. App'x 542, 543 (2d Cir. 2020) (quoting *Fuller v. Bd. of Immigration Appeals*, 702 F.3d 83, 86 (2d Cir. 2012)).

To be sure, one event that mooted part of Plaintiff's case was DMV's voluntary decision to invite Plaintiff to apply for an "X" gender license through a manual process without answering the gender question on the application, but that does not change the outcome. "In order to determine whether voluntary cessation of conduct moots a controversy, a defendant must show[:] 1) that the conduct has, 'in fact, ceased'; 2) that there is 'no reasonable expectation that the alleged violation will recur'; and finally, [3)] that the 'interim relief or events have completely and irrevocably eradicated the effects of the alleged violation.'" *Samele v. Zucker*, 324 F. Supp. 3d 313, 328 (E.D.N.Y. 2018) (citations omitted) (quoting *Am. Freedom Defense Initiative v. MTA*, 815 F.3d 105, 109 (2d Cir. 2016)). Here, there is no question that the complained-of conduct has ceased. Plaintiff identified two problems in seeking a New York driver's license: the inability to obtain an "X" gender identification

7

marker on the license and the need to attest to their gender as either "male" or "female" in response to a gender question on the application. But DMV is in the process of replacing its legacy system to permit applicants to receive an "X" gender license through an automated process and will allow Plaintiff to apply for an "X" gender license immediately through a manual process that does not require them to answer the gender question on the application. Kline Decl. ¶¶ 6-11. There is nothing before the Court to suggest that any aspect of the complained-of conduct is ongoing. *See Lamar Advertising of Penn, LLC v. Town of Orchard Park*, 356 F.3d 365, 377 (2d Cir. 2004) (Sotomayor, J.) ("Any arguments as to the unlawfulness of the [policy] as amended should have been raised by [plaintiff] in an amended complaint. As [plaintiff] never made a motion to amend . . . none of the claims pertaining to [] amendments are properly before us.").

Nor is there any reasonable expectation that Plaintiff will face in the future any of the alleged harms. Upon Plaintiff's successful completion of the manual application process, DMV will issue Plaintiff an "X" gender license that will not expire for up to five years, just like any other newly-issued New York driver's license. Kline Decl. ¶ 12. Long before the expiration date on Plaintiff's "X" gender license, DMV's new system will be operational, allowing nonbinary New Yorkers such as Plaintiff to apply for an "X" gender license through the automated license application and renewal process. *Id.* ¶ 7. The Government's representations as to the implementation of DMV's new system allowing for applicants to obtain an "X" gender license and the adoption of a manual process to provide Plaintiff immediately with an "X" gender license are entitled to "deference." *Holland v. Goord*, 758 F.3d 215, 224 (2d Cir. 2014); *accord Am. Freedom Defense Initiative v. MTA*, 109 F. Supp. 3d 626, 630 (S.D.N.Y. 2015) (Koeltl, J.) ("*AFDI I*") ("Some deference must be afforded to the representations of a public authority that certain conduct has been discontinued."), *aff'd*, 815 F.3d 105 (2d Cir. 2016) ("*AFDI II*").

This "deference to the [government]'s decision to amend is the rule, not the exception," and the Second Circuit has emphasized that a court should not "hold that a significant amendment or repeal of a challenged [policy] that obviates the plaintiff's claims does not moot a litigation, absent evidence that the defendant intends to reinstate the challenged [policy] after the litigation is dismissed, or that the [government] itself does not believe that the amendment renders the case moot." *Lamar Advertising*, 356 F.3d at 377; *see also Harrison & Burrowes Bridge Constructors, Inc. v. Cuomo*, 981 F.2d 50, 61 (2d Cir. 1992) ("Constitutional challenges to statutes are routinely found moot when a statute is amended."); *cf. N.Y. State Rifle & Pistol Ass'n v. City of New York*, 140 S. Ct. 1525, 1526 (2020) (holding Second Amendment challenge to New York City's firearms transportation rule was moot after the rule was amended to provide the relief requested by petitioners while the case was on appeal); *Amato v. Elicker*, No, 20 Civ. 464, 2020 WL 2542788, at *5 (D. Conn. May 19, 2020) (holding plaintiff's challenge to prior versions of Connecticut's COVID-19 gathering bans was moot). That is particularly the case here, where the State had already embarked on a project at great expense to overhaul DMV's legacy computer system to implement the very change Plaintiff seeks and DMV acted quickly and decisively to offer a manual process to allow Plaintiff to obtain an "X" gender license without having to answer the gender question on the application form. Kline Decl. ¶¶ 6-11.

Lastly, "the effects of the [] challenged conduct" have been completely eliminated because Plaintiff will suffer no harm from receiving an "X" gender license through a manual process that avoids their need to respond to the gender question on the application form. *AFDI II*, 815 F.3d at 110. With the DMV legacy system that precludes DMV from issuing an "X" gender license in the process of being replaced and the Plaintiff able to apply immediately for an "X" gender license, there is nothing more to litigate. *See B.C. v. Colton-Pierrepont Cent. Sch. Dist.*, 357 F. App'x 366, 368 (2d Cir. 2009) (summary order) ("Because the Amendment effectively provides plaintiffs with

9

precisely the relief sought in this litigation . . . plaintiffs no longer have a sufficient personal stake in the outcome of this case to permit us to retain jurisdiction."). The case or controversy is over, the Court's jurisdiction is at an end, and this action should be dismissed.

## II. THE ELEVENTH AMENDMENT BARS RELIEF AGAINST A STATE OFFICIAL BASED ON PAST CONDUCT

The Complaint should be dismissed for the independent reason that the relief Plaintiff seeks is unavailable due to the Eleventh Amendment, which "does not permit judgments against state officers declaring that they violated federal law in the past . . . ." *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993); *see also Szymonik v. Connecticut*, No. 19-230, 2020 WL 1650329 (2d Cir. Apr. 3, 2020) (summary order) (holding Eleventh Amendment "bars federal courts from issuing retrospective declaratory relief against state officials for past violations of federal law"); *accord Treistman v. McGinty*, 804 F. App'x 98, 99 (2d Cir. 2020) (summary order) (rejecting the plaintiff's demand for declaratory judgment as "entirely retrospective and [] barred by Eleventh Amendment immunity"); *Kaminski v. Semple*, 796 F. App'x 36, 38 (2d Cir. 2019) (summary order) (holding a declaration dealing with only past events "would be retrospective and barred"); *Ward v. Thomas*, 207 F.3d 114, 120 (2d Cir. 2000) (holding declaratory judgment was "unavailable in federal court because there is no claimed continuing violation of federal law or state officials violating the repealed law in the future.").

The only remaining substantive relief Plaintiff seeks is to have the Court declare that Defendants' past conduct in failing to provide Plaintiff with an "X" gender license and using an application form that requires an applicant to make a "male" or "female" gender selection "are in violation of the Equal Protection Clause . . .; the Due Process Clause . . .; the Free Speech Clause of the First Amendment . . . ; and New York [State] Human Rights Law's provisions prohibiting unlawful discriminatory practices in places of public accommodation." Compl. at p. 30. But "[a]ny

10

declaration could say no more than that [New York] had violated federal law in the past." *Ward*, 207 F.3d at 120.

Federal courts have repeatedly held that the Eleventh Amendment bars a declaratory judgment when a challenged state policy has been superseded or rescinded. For instance, in *Inside Connect v. Fischer*, No. 13 Civ. 1138, 2014 WL 2933221 (S.D.N.Y. June 30, 2014), a challenge to the New York State Department Of Corrections and Community Supervision's policy barring the plaintiff from distributing flyers to his fellow inmates, Judge Seibel dismissed the plaintiff's request for declaratory relief after the department agreed to distribute the documents, reasoning that "the only available declaratory relief would be that Defendants' past policy or practice violated Plaintiff's rights, but such relief is barred by the Eleventh Amendment." *Id.* at *7. In *Ward*, the Second Circuit rejected the plaintiff's request for a declaratory judgment that Connecticut had violated requirements of the federal Aid for Families with Dependent Children Program because prospective relief had become unavailable with that program's termination. *See* 307 F.3d at 120. And in *Green v. Mansour*, 474 U.S. 64 (1985), the Supreme Court held that declaratory relief was unavailable against a Michigan state agency for allegedly calculating welfare benefits incorrectly, when a subsequent Act of Congress altered the calculations and Michigan's practices were brought into line. *See id.* at 65. The Court held that the Eleventh Amendment would prevent any declaratory judgment because "[t]here is no claimed continuing violation of federal law, and therefore no occasion to issue an injunction," leaving only "a dispute about the lawfulness of respondent's past actions." *Id.* at 73. Here, too, with DMV undertaking a project that will allow the State to issue "X" gender licenses and DMV's offer to provide Plaintiff immediately with an "X" gender license in the interim through a manual process, there is no alleged ongoing violation, and thus no ability to issue a retrospective declaration.

Nor can Plaintiff fit within the narrow exception to the Eleventh Amendment bar "where there is a threat of future enforcement that may be remedied by prospective relief," *Patterson v.*

11

*Patterson*, No. 16 Civ. 844, 2019 WL 1284346, at *5 (W.D.N.Y. Mar. 20, 2019) (collecting cases). Once Plaintiff obtains their "X" gender license, it will remain valid long after the new system allowing for "X" gender licenses on an automated basis is operational so Plaintiff will have no issue when it comes time to renew the license. *See Treistman* 804 F. App'x at 100 (affirming Eleventh Amendment dismissal where plaintiff's "assertions that there would be future violations were speculative"); *Patterson*, 2019 WL 1284346 at *6 (dismissing claim under Eleventh Amendment where "Plaintiff does not allege that Defendants are currently engaging in unconstitutional behavior or that a policy could be enforced against Plaintiff in violation of his constitutional rights."). With Plaintiff seeking only retrospective relief, and no plausible threat of any future enforcement that would harm Plaintiff, the Eleventh Amendment bars Plaintiff's suit.

## CONCLUSION

For the reasons set forth above, Defendants respectfully request that the Court grant the motion, dismiss the Complaint with prejudice, and grant such other and further relief as it deems just and proper.

Dated: New York, New York
       October 30, 2020

LETITIA JAMES
Attorney General
State of New York

By: ___s/ *Andrew Amer*___
        Andrew Amer
Special Litigation Counsel
28 Liberty Street
New York, NY  10005
(212) 416-6127
Andrew.Amer@ag.ny.gov


*Attorney for Defendants*
